AKERMAN SENTERFITT LLP
Attorneys for the Movants
Keith N. Costa, Esq.
Susan F. Balaschak, Esq.
Akerman Senterfitt LLP
335 Madison Avenue, Suite 2600
New York, NY  10017-4636
(212) 880-3800

Keith N. Costa, Esq. (CT15634)
Susan F. Balaschak, Esq. (Pro Hac Vice application pending)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| SAGECREST II LLC | ) Case No. 08-50754(AHWS) |
| SAGECREST FINANCE, LLC | ) 08-50755 (AHWS) |
| SAGECREST HOLDINGS LIMITED | ) 08-50763 (AHWS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |

March 6, 2009

## MOTION TO SHOW CAUSE AS TO WHY SCOPE OF SPECIAL COUNSEL KELLY DRYE & WARREN'S EMPLOYMENT SHOULD NOT BE CLARIFIED UPON TEMPORARY STAY OF NEW YORK STATE COURT LITIGATION AND WHY THIS CASE SHOULD NOT BE SUBJECT TO A SCHEDULING ORDER

**TO THE HONORABLE ALAN H.W. SHIFF, UNITED STATES BANKRUPTCY JUDGE:**

Ian S. Peck, ACG Credit Company II, LLC ("ACG II"), ACG Finance Company LLC, Fine Art Finance, LLC, Art Capital Group, LLC, Art Capital Group, Inc., and ACG Credit Company, LLC (collectively, the "Movants")[1] by and through their undersigned counsel,

---

[1] On December 22, 2008, Movants filed a proof of claim assigned claim number 28 for an amount not less than $148,000 and reserved their rights to, among other things, supplement such claim, assert that such amounts and other amounts are administrative and/or secured claims arising under or related to the Settlement Agreement, as defined herein.

1

{NY055433;1}

Akerman Senterfitt LLP, hereby file this motion to show cause as to why the scope of Special Counsel Kelley Drye & Warren's employment by Debtors in this case pursuant to 11 U.S.C. § 327(e) should not be clarified pending a temporary stay of prosecution by said Special Counsel on behalf of Debtor, SageCrest II, LLC ("Debtor" or "SageCrest") of its recently instituted state court litigation against the Movants in the Supreme Court of the State of New York, New York County, Index No. 600166/09, until further Order of this Court.

In addition, Movants hereby file this motion to show cause as to why this Court should not enter a Scheduling Order in this case for the Debtor to become current in its filing of monthly operating reports, payment of U.S. Trustee Quarterly fees, and obtaining approval and confirmation of a Plan of Reorganization and Disclosure Statement by dates certain to be set by this Court.

## BACKGROUND FACTS

On or about September 30, 2008, SageCrest filed an application to have Kelley Drye & Warren ("Kelley Drye"), which itself was a creditor of SageCrest in the amount of nearly $740,000, to be appointed as special counsel. pursuant to 22 U.S.C. §327 (e) (the "Application"). In the Application, SageCrest asserted, inter alia, that Kelley Drye had represented SageCrest and its related entities in certain matters prior to the petition date and sought to continue that representation on those matters, including:

> (f) Advising, counseling and representing SageCrest II in connection with the settlement and the obligations contained in the settlement that was reached in SageCrest II, LLC v. ACG Credit Company, LLC, ACG Credit Company II, LLC, Art Capital Group, LLC, ACG Finance Company, LLC, and Ian Peck, and the obligations that arise out of that settlement; [and]

2

{NY055433;1}

    (g) Advising, counseling and representing Debtors in connection with any actions or proceedings involving any entities in which either Ian Peck or Andrew Rose has an interest... (Application, pp. 4-5).

Several creditors, including the Committee of Equity Security Holders, filed objections to Kelley Drye's retention. Those objections included (i) that Kelley Drye failed to provide adequate detail of the nature and the scope of its proposed representation, (ii) whether the proposed representation is of such a nature that it can be prosecuted and managed by general counsel, and (iii) the fact that SageCrest entities owed Kelley Drye several hundred thousand dollars in fees. Following these Objections, the Debtors filed the First Supplemental Declaration of John A. Garraty, a partner at Kelley Drye, in support of the Application dated November 5, 2008 (the "Supplemental Declaration").

Notwithstanding the foregoing objections, by Order dated November 25, 2008 (the "Appointment Order"), this Court granted the application. In the Appointment Order, this Court "authorized and empowered" the Debtors to retain Kelley Drye to represent SageCrest and related Debtors "as set forth in the Application." This Court imposed a "$50,000 per calendar month" fee cap upon Kelley Drye for matters other than those specifically listed in paragraphs (a)-(g) of the Declaration and Supplemental Declaration and also "retain[ed] jurisdiction over the implementation and interpretation of" the Appointment Order.

Movants and SageCrest, among others, are parties to a Settlement and Release Agreement dated May 19, 2008 (the "Settlement Agreement"), pursuant to which, among other things, ACG II assigned to SageCrest, upon a payment default, the right to service, collect, administer and manage certain loan agreements between ACG II, as lender and ACG II's borrowers (the "Notes"). The Notes are collateralized by various artwork (the "Art Collateral"). Beginning in mid October, 2008, ACG II, by its counsel sought to engage

3

{NY055433;1}

SageCrest, through its counsel Kelley Drye, in negotiations toward the purchase of the Notes.  ACG II expressed to SageCrest on a number of occasions its willingness to purchase the Notes, at fair market value, with such value to be determined by an independent third party appraiser.  ACG II understood that the Debtors intended to liquidate all of their assets, so it believed SageCrest, acting in the best interest of creditors, would embrace the opportunity to sell these Notes, as well as other assets to ACG II for fair market value. Despite these difficult economic times and the rapid decline in the value of the Art Collateral, SageCrest did not embrace the opportunity to maximize the value of the Notes for the benefit of its creditors. Instead, SageCrest chose by its counsel Kelley Drye to pursue litigation to collect on these Notes, an unnecessary, costly, and protracted alternative that clearly does not serve the best interests of creditors.  To the contrary, as will be shown below, the costs and expense of this litigation in light of the small interest the Debtors' hold in the Notes does not justify the litigation alternative chosen by SageCrest.

On or about January 20, 2009, SageCrest, as plaintiff, sought replevin and a preliminary injunction against the Movants, as defendants, in the Supreme Court of the State of New York, New York County, Index No. 600166/09.  Previously, the same parties had entered into the Settlement Agreement, which resolved a long-standing dispute between them.  This Settlement Agreement is the same settlement referred to in paragraph "f" of Kelly Drye's Special Counsel Application.  Said state court litigation is still in its initial stages, issues have not been joined and discovery has not commenced. The next hearing before Justice Eileen Bransten is currently scheduled for March 27, 2009.

{NY055433;1}

**ARGUMENT**

The first issue presented is whether Special Counsel Kelley Drye is performing a special role contemplated by this Court upon approving said retention by the Debtors. In granting an application to employ special counsel, pursuant to 11 U.S.C § 327(e), the "special task(s) for which employment is sought [must] be clearly demarked in the application so the court can determine whether the proposed attorney is conflicted and whether the services are indeed special tasks." In the Drexel Lambert Group Inc., 112 B.R. 584,586 (Bankr. S.D.N.Y. 1990) (internal citation omitted). In other words, "[a] threshold requirement under § 327(e) is that the appointment be for a "special purpose," and not to represent the trustee in "conducting the case." In re Carl H. Newman, 138 B.R. 683, 686 (Bankr. S.D.N.Y 1992).

At the time of filing its retention application on behalf of Kelley Drye, as its special counsel, the Debtor did not represent that actual litigation would shortly be commenced in state court in connection with the Settlement Agreement, described in paragraph "f" of the Special Counsel Application. Nor did the Debtor make any such representation to this Court on November 5, 2008, when it filed the Supplemental Declaration or at the hearing on the Objections held on November 6, 2008. The Debtor also failed to disclose to this Court that SageCrest only held a 23% interest in the underlying obligations which SageCrest sought to enforce through Special Counsel by the state court litigation. By the Debtor's own admission, under #18 of "Schedule B – Personal Property – Amended" filed January 30, 2009, the nature of Debtor's interest covered by the Settlement Agreement is listed as "Two secured notes remaining from Art Capital Group in the amounts of $6.7MM and $4.425MM"

{NY055433;1}

for only 23% - not 100% ownership[2]. It is ACG II's understanding that the other 77% was transferred to an offshore related non-debtor entity shortly before the petition was filed, an offshore related non-debtor entity represented by Kelley Drye.

Without being fully disclosed in the Application, this estate's funds are being used to prosecute state court litigation which, even assuming *arguendo* is justified, would result in the estate benefiting by only 23% and an offshore non-debtor entity reaping 77% of any recovery. It is questionable whether creditors would have approved the retention had this information been fully disclosed. Further, it begs the question: Why should this estate bear the full burden of this litigation, when it stands to benefit so little?

According to its own Schedule B (Amended), the Debtor "SCII hold 23% interest and has participated out remaining interest to offshore entities." Not only did the Debtor fail to disclose imminent state court litigation against the Movants, but the Debtor also failed to provide any detail regarding the underlying claim upon which this estate's funds would be expended. It is questionable whether this state court litigation is even worthy of being handled by special counsel rather than debtor's general counsel.

This leads to the second issue of whether Kelley Drye has a potential conflict of interest, heretofore undisclosed to this Court.

In the Supplemental Declaration, Kelley Drye does not disclose that Alan Milton, in his individual capacity, is a named party to the Settlement Agreement. Mr. Milton was represented by Kelley Drye in connection with the underlying litigation and the Settlement

---

[2] The $4.25MM Note is not the subject of the state court action; it does not become due until toward the end of 2010.

6

{NY055433;1}

Agreement. Upon information and belief, Kelley Drye may also represent Alan Milton in other matters that impact the Debtors.

In the initially filed Declaration of John A. Garraty in Support of the Application Pursuant to Section 327(e) of the Bankruptcy Code to Retain and Employ Kelley Drye & Warren LLP as Special Counsel to the Debtors *Nunc Pro Tunc* (the "Declaration") it is revealed that Special Counsel has represented other interested parties, including Philip Milton, a principal of the Debtors. Declaration at Exhibit 1. It is presently unclear whether Special Counsel continues to represent Phillip Milton and, if so, in what capacity. Without sufficient explication of these relationships, it is impossible to determine whether Philip Milton or Alan Milton have interests adverse to the Debtors which adverse interest might disqualify Special Counsel. While one of the Objections questioned the relationship between the Debtors and Philip Milton, nothing in the transcript of the hearing on the Objections held on November 6, 2008, clarified their prior or current relationship. In addition, it is still not clear whether the relationship between Debtors and Alan Milton was ever disclosed to the Court at any hearing and whether any past or current representation exists that would impact the Debtors.

At paragraph 14 of the Declaration, Special Counsel represents that it will not undertake the representation of any parties other than the Debtors in connection with the Debtors' Chapter 11 cases. In goes on to represent that "in matters unrelated to the Debtors' Chapter 11 cases, Kelley Drye represents the following subsidiaries and affiliates. . . . SCFR Limited. . . ." Upon information and belief, "SCFR Limited" is the offshore non-debtor entity that holds 77% of the Notes that form the subject of the new state court action that Kelley Drye asserts it has authority to pursue, as Special Counsel, pursuant to this

7

{NY055433;1}

Court's Order. Clearly, any transfers by SageCrest to "offshore" related non-debtor entities and non-related entities will be carefully and closely scrutinized[3]. The potential for conflicts between SageCrest and any "offshore" non-debtor entity that received property of the estates is apparent. All of this information should have been disclosed in (i) the application to retain Kelley Drye; (ii) in the Declaration; (iii) the Supplemental Declaration and/or (iv) at the hearing on the Objections to the Application. Before Kelley Drye is permitted to proceed with the representation of SageCrest in connection with the prosecution of its newly instituted state court litigation of the Settlement Agreement, answers to a number of critical questions, including those regarding its relationship with the Miltons and its representation of offshore entities with interest potentially adverse to SageCrest and its related estates, need to be answered.

## SCHEDULING ORDER

On August 17, 2008, SageCrest and SageCrest Finance, LLC ("SageCrest Finance") filed their respective voluntary petitions for Chapter 11 relief. On August 20, 2008, SageCrest Holdings Limited ("SageCrest Holdings") also filed its voluntary petition for Chapter 11 relief. SageCrest, SageCrest Finance and SageCrest Holdings (collectively the "Debtors") remain in control of their reorganization effort as debtors-in-possession. However, Debtors are not current nor timely in the filing of all their monthly operating reports as required by Bankruptcy Rule 2015 (a)(2). Since filing for Chapter 11 protection in August, 2008, Debtors, have only last month filed their monthly operating reports through the end of October, 2008. The Debtors' monthly operating reports for November 2008,

---

[3] In addition to any violation of the Bankruptcy Code that may have occurred as a result of the transfer by SageCrest of its interests in the Notes, the transfer violated the Settlement Agreement.

8

December, 2008, and January 2009 all remain unfiled and unavailable for review by creditors. Therefore, a scheduling order should be put into place not only to insure that the Debtors timely file their monthly operating reports, but also that the Debtors file and seek timely approval of a disclosure statement and confirmation of a plan of reorganization.

A debtor-in-possession cannot be permitted to do anything it wants under Chapter 11. Under Section 1107 of the Bankruptcy Code, these Debtors are specifically enjoined to act as if they were a trustee under Section 704. Pursuant to 11 U.S.C. §§ 704(a)(7) and 704 (a)(8), the Debtors are required to timely file monthly operating reports. See In re Cloisters of Brevard, Inc., 117 B.R. 722, 723 (Bankr. M.D. Fla. 1990); In re Modern Office Supply, Inc., 28 B.R. 943, 945-46 (Bankr. W.D. Okla. 1983). If a debtor does not file these reports, then the ability of parties in interest to monitor the operations of the debtor is impaired. For example, creditors will not be able to determine if these Debtors are current with post-petition obligations or making improper payments to professionals.

A scheduling order would therefore allow the Debtors to continue their reorganization efforts unhindered by such motions regarding any future failure to file all required monthly operating reports. In addition, the creditors would be able to count upon a timetable for the filing and subsequent approval of a disclosure statement leading, hopefully, towards a successful confirmation of plan of reorganization under 11 U.S.C. §1129. Section 1121 (d) of the Bankruptcy Code authorizes the court to extend, shorten, or fix the time within which only the debtor may file a plan and disclosure statement. 11 U.S.C. §1121 (b), which establishes the exclusive period within which only the debtor may file a plan, does not impose any requirement that the debtor actually file a plan or suffer any specific

{NY055433;1}

consequences. See In re Fernandez, 97 B.R. 262,263 (Bankr. E.D.N.C. 1989). Thus, the bankruptcy court has the inherent authority to set a deadline for the filing of a plan and disclosure statement. See In re Hollander, 50 B.R. 15 (Bankr. S.D. Fla. 1985). In this case, the Court, by order dated December 15, 2008, has extended the Debtors time to file a plan through March 31, 2009. This Court should include in the proposed scheduling order a provision directing these Debtors to file a plan and disclosure statement by no later than March 31, 2009, and to thereafter obtain approval and confirmation from this Court by dates certain, then cause exists, upon failure to comply with the terms of said scheduling order, for this Court to convert or dismiss these cases under 11 U.S.C. §1112(b)(4)(E).

### WAIVER OF MEMORANDUM

Because the legal points and authorities upon which this Motion are incorporated herein, the Movants respectfully request that any requirement that a separate memorandum of law be filed and served be deemed satisfied by this Motion.


Akerman Senterfitt LLC
Attorneys for the Movants


By: _____/s/_____
Keith N. Costa (CT15634)
Susan F. Balaschak (Pro hac Vice application pending)
Akerman Senterfitt LLC
335 Madison Avenue
New York, New York 10017-4636
(212) 880-3800  Fax: (212) 880-8965