UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

---

| | |
|---|---|
| In re: | Chapter 11 |
| | Administratively Consolidated |
| SageCrest II, LLC, | Case No. 08-50754 (Lead) |
| SageCrest Finance, LLC, | Case No. 08-50755 |
| SageCrest Holdings, Limited, | Case No. 08-50763 |
| SageCrest Dixon, Inc., | Case No. 08-50844 |
| Debtors. | |

---

*Appearances*:

| | | |
|---|---|---|
| James Berman, Esq. | : | Attorneys for Debtors |
| ZEISLER & ZEISLER, P.C. | : | |
| 558 Clinton Avenue | : | |
| Bridgeport, CT | : | |
| | | |
| Robert S. Friedman, Esq. | : | Proposed Special Counsel |
| SHEPPARD MULLIN RICHTER | : | for Debtors |
|     & HAMPTON LLP | : | |
| 30 Rockefeller Plaza | : | |
| New York, NY | : | |
| | | |
| Elizabeth J. Austin, Esq. | : | Attorneys for Objector |
| PULLMAN & COMLEY, LLC | : | Art Capital Parties |
| 850 Main Street | : | |
| Bridgeport, CT | : | |

**MEMORANDUM AND ORDER
OVERRULING ART CAPITAL PARTIES' OBJECTION TO AND
GRANTING DEBTORS' RETENTION APPLICATION**

## INTRODUCTION

Presently before the Court is Debtor's Application for Order Authorizing the Retention of Sheppard Mullin Richter & Hampton LLP as Special Counsel Nunc Pro Tunc to November 4, 2009 (the "Retention Application"), the Art Capital Parties'[1] Objection to Debtor's Application, and the Debtor's Reply thereto.[2] Debtor SageCrest II LLC's ("SC II") Retention Application is prompted by Attorney Robert Friedman's having moved from Kelley Drye & Warren LLP ("Kelley Drye") to Sheppard Mullin Richter & Hampton LLP ("Sheppard Warren"). Through its Objection to SC II's Retention Application, Art Capital seeks the disqualification of Sheppard Mullin as counsel for SC II. Art Capital argues that there is an actual conflict of interest between Sheppard Mullin's prior representation of Art Capital and its proposed representation of SC II. For the reasons that follow, the Court overrules Art Capital's objection and grants SC II's Retention Application.

## FACTUAL BACKGROUND

While the Court assumes the parties' familiarity with the facts of the case, for convenience it provides the following relevant summary.

---

[1] The "Art Capital Parties" include ACG Credit Company, LLC, ACG Credit Company II, LLC, art Capital Group, LLC, ACG Finance Company, LLC, Fine Art Finance LLC, and Mr. Ian Peck. For convenience, the Court shall refer to the Art Capital Parties as "Art Capital".

[2] After the December 8, 2009 hearing on the Retention Application, the Art Capital Parties also filed a "Supplement in Support of Objection". As the Court does not rely on SC II's 'waiver' argument in making its ruling, *see, infra*, it need not consider Art Capital's Supplement.

On August 17, 2008, SC II filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.[3] In October 2008, SC II sought to retain Kelley Drye as its special counsel to represent the Debtors in certain matters, including, but not limited to, matters involving disputes with and litigation against Art Capital, and in particular, the enforcement of a settlement agreement with Art Capital that required Art Capital to repay SC II approximately $30 million, under which Art Capital currently owes SC II over $6 million, and which Art Capital has allegedly breached (hereinafter, the "NY Collection Action"). The application was approved and a retention order was entered on November 25, 2008. (*See* doc. #323.) The scope of retention was expanded upon Court approval in late July 2009 (*see* doc. #701) to permit Kelley Drye to represent the Debtors in additional matters not involving Art Capital.

Attorney Robert Friedman ("Friedman") was the lead counsel at Kelley Drye handling the Art Capital matters. In early November 2009, Friedman resigned from Kelley Drye and joined Sheppard Mullin as a partner. It is this change of firms by Friedman that causes SC II to seek retention of Sheppard Mullin in place of Kelley Drye.

---

[3] Related entity SC Finance also filed for Chapter 11 bankruptcy protection on August 17, 2008. On August 20, 2008, SageCrest Holdings Limited filed for Chapter 11 bankruptcy protection. And, on September 11, 2008, related entity SageCrest Dixon filed for Chapter 11 bankruptcy protection. SC II's case is being jointly administered with these cases. However, the Retention Application is brought by SC II as it is the entity in whose name the loan agreements and other documents were made with Art Capital.

## THE RETENTION APPLICATION AND THE OBJECTION

Among other things, in its Retention Application, SC II states:

14. . . . Friedman has been in charge of and has performed extensive legal work for SC II in connection with the Art Capital matters described above, as well as other matters. As a result, Friedman is very familiar with the Debtors and their business generally, and in particular the background and facts relevant to the Art Capital matters. Mr. Friedman has been personally handling the suit in New York states court to enforce SC II's rights under the settlement agreement with Art Capital to collect over $6 million currently owing by Art Capital to SC II [*i.e.*, the NY Collection Action].

15. Due to Friedman's knowledge of and past representation of SC II in the Art Capital matters, Friedman and Sheppard Mullin can provide coordinated, non-duplicative legal services for all of the Art Capital-related matters described above. Friedman has been the lawyer communicating and coordinating with the Debtors' other counsel and professionals, as well as counsel to the Equity Committee, regarding the status of the Art Capital matters throughout the pendency of the Bankruptcy Case.

16. As a consequence of his close working relationship with the Debtors and their counsel, and his intimate familiarity with all of the facts, documents and legal issues involved in the Art Capital matters, Friedman is uniquely qualified to continue his representation of SC II in the Art Capital matters, and to assure that the matters are effectively and efficiently [handled].

(SC II's Retention Application at ¶¶14-16, pp.5-6.)

Further, in his supporting affidavit, Friedman states, among other things:

8. Sheppard Mullin did represent an affiliate or related entity of Art Capital as local counsel in a matter unrelated to this engagement several years ago. I am informed that Sheppard Mullin was engaged as local counsel in an action to collect funds related to a loan. This matter is closed. Therefore, this prior representation presents no conflict with the current proposed representation.

(Friedman's Affidavit at ¶8.)

Art Capital objects to SC II's retention of Sheppard Mullin stating, among other things:

> [P]rior to taking a position adverse to the Art Capital Parties, Sheppard Mullin had, for years, acted as the Art Captial Parties' counsel in a collection action substantially related to the scope of services set forth in the Application. During this representation, Sheppard Mullin was provided with access to material and confidential documents, discussions and correspondence directly involving the Art Capital Parties' strategy and interest with regard to their business, loan portfolio and ongoing dispute with the Debtors. As a result of this actual conflict of interest, Sheppard Mullin must be disqualified as counsel to the Debtors and the Application must be denied.

(Art Capital's Objection at ¶1, p.2.) More specifically, Art Capital states:

> 3. <u>Sheppard Mullin Retention</u>. From 2007 through the middle of 2008, throughout the period during which the Art Capital Parties were negotiating the Settlement, the Art Capital Parties retained Sheppard Mullin to represent them in an action before the Superior Court of the State of California, County of Los Angeles, captioned ACG Finance Company, LLC (successor in interest to ACG Credit Company, LLC) and Fine Art Finance, LLC v. DTFA, LLC, *et al*. (Case No. BC377427) (the "[CA Collection Action]"). The [CA Collection Action] concerned the Art Capital Parties' efforts to collect on a loan asset in which, at the time, the Debtors had asserted a security interest. While negotiating the settlement of the [CA Collection Action], the Art Capital Parties were simultaneously negotiating the Settlement [of the NY Collection Action] with the Debtors and Sheppard Mullin was necessarily privy to confidential and material discussions about the parallel proceedings.

(*Id.* at ¶3, p.3.) Art Capital alleges that its CA Collection Action is substantially related to SC II's NY Collection Action and, as a result, Sheppard Mullin is precluded from representing SC II since, as a former client of Sheppard Mullin, Art Capital does not consent to the representation. No affidavit or other admissible evidence has been filed in support of Art Capital's objection.

## APPLICABLE STANDARD RE: CONFLICT OF INTEREST

One who seeks disqualification of an attorney carries a high standard of proof since "in disqualification matters [courts] must be solicitous of a client's right freely to choose his counsel[,] a right which of course must be balanced against the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978) (citing *Silver Chrysler, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753 (2d Cir. 1975) (further citation omitted). "In ruling, courts should balance the significant interests and consider the totality of the circumstances." *In re WorldCom, Inc.*, 2008 WL 4018841, at *4 (Bankr. S.D.N.Y. Aug. 25, 2008). In that vein, the Second Circuit has held that disqualification is appropriate only if the violation "gives rise to a significant risk of trial taint." *Russell-Stanley Holdings, Inc., v. Buonanno*, 210 F. Supp. 2d. 395, 397 (S.D.N.Y. 2002) (citing *Glueck v. Jonathan Logan*, 653 F.2d 746, 748 (2d Cir. 1981) (further citation omitted).

Under New York law, applicable here,[4] a party seeking the disqualification of its adversary's counsel must prove:

>  (1) the moving party is a former client of the adverse party's counsel;
>  (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>  (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior

---

[4] The Second Circuit approves the use of New York's Disciplinary Rule 5-108 in determining whether an attorney should be disqualified. *See, e.g., Kittay v. Kornstein*, 230 F.3d 531, 538 n.2 (2d Cir. 2000); *see also Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).

representation of the client.

See In re WorldCom, Inc., 2008 WL 4018841, at *4 (Bankr. S.D.N.Y. Aug. 25, 2008) (citing Hempstead Video, Inc. v. Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005)); see also Russell-Stanley Holdings, 210 F. Supp. 2d at 397 (applying New York's Code of Professional Responsibility Disciplinary Rule 5-108 in determining whether an attorney should be disqualified).  The Second Circuit has also held that "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." Russell-Stanley Holdings, 210 F. Supp. 2d at 397 (citing Allegaert v. Perot, 565 F.2d 246, 250 (2d Cir. 1977)).

## THE PRESENT CASE

There is no dispute that Art Capital is a former client of Sheppard Mullin, the proposed special counsel for SCII, Art Capital's adversary.  However, while it can satisfy the first prong of the three-prong disqualification test, Art Capital's objection fails on the second prong since it fails to make a showing that the CA Collection Action is substantially related SC II's NY Collection Action.  The Court is presented with little more than counsel's characterization of the CA Collection Action:

> The [CA Collection Action] concerned the Art Capital Parties' efforts to collect on a loan asset in *which, at the time, the Debtors had asserted a security interest*.  While negotiating the settlement of the [CA Collection Action], the Art Capital Parties were simultaneously negotiating the Settlement [of the NY Collection Action] with the Debtors and Sheppard Mullin was necessarily privy to confidential and material discussions about the parallel proceedings.

(Art Capital's Objection at ¶3, p.3 (emphasis added).)  Simply because SC II asserted a security interest in the underlying loan asset at the time of the CA Collection Action does not demonstrate a substantial relationship to SC II's NY Collection Action.  In fact, Attorney Friedman stated at the December 8, 2009, hearing on SC II's Retention Application that he was unaware of the CA Collection Action until recently.  Indeed, since 2005, Attorney Friedman has been SC II's lead counsel in the NY Collection Action (as well as other litigation involving the Art Capital Parties), including the negotiation of the settlement of that action.  Thus, if the settlement of the NY Collection Action was substantially related to the CA Collection Action, as asserted by Art Capital, one would expect Attorney Friedman to know of the CA Collection Action.  Yet, Attorney Friedman represented otherwise.  This, alone, eviscerates Art Capital's contention that the CA Collection Action and the NY Collection Action are interrelated.  Furthermore, the fact that the CA Collection Action was pursued at the same time as the NY Collection Action does not necessarily create a substantial relationship between the two actions, let alone any relationship.  Without more, the timing of the two actions appears to be nothing more than a coincidence.  Certainly, this is not a basis for disqualification.  *See also, e.g., Russell-Stanley*, 210 F. Supp. 2d at 398 n.1 (noting that "the Second Circuit is less inclined than state courts to disqualify counsel based on conflicts of interest") (citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

In any event, Art Capital has not shown that Attorney Friedman is in a position to receive information from his new firm, Sheppard Mullin, about Art Capital, which Art Capital may reasonably assume Sheppard Mullin will withhold from its proposed new client, SC II.  *See id.* at 397 (quoting *Allegaert*, 565 F.2d at 250).  First, merely as local

counsel in the CA Collection Action, there has been no showing that Sheppard Mullin took an active role in the action or possesses confidential information about Art Capital. Second, any involvement in the CA Collection Action by Sheppard Mullin was confined to its California office; there is no indication that the California office shared any information with its counterpart in New York. Finally, even assuming, *arguendo*, that Sheppard Mullin's New York office was privy to confidential information about the CA Collection Action, Attorney Friedman has only recently joined Sheppard Mullin's New York office and has stated that the firm has implemented an "ethical wall" to preclude him from such information. In sum, Art Capital has failed to show that Attorney Friedman is in a position to receive confidential information about Art Capital, Sheppard Mullin's former client.

## CONCLUSION

Having balanced the significant interests of Art Capital and SC II and having considered the totality of the circumstances, the court finds Art Capital cannot meet its high burden of proof in seeking Sheppard Mullin's disqualification. Accordingly,

**IT IS ORDERED** that the Art Capital Parties' Objection is overruled and SC II's Retention Application is granted.

**SO ORDERED** this 10th day of December 2009 at Bridgeport, Connecticut.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge