UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In Re:<br><br>SAGECREST II LLC,<br>SAGECREST FINANCE LLC,<br>SAGECREST HOLDINGS LIMITED, and<br>SAGECREST DIXON INC.,<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 08-50754 (AHWS)<br>CASE NO. 08-50755 (AHWS)<br>CASE NO. 08-50763 (AHWS)<br>CASE NO. 08-50844 (AHWS)<br><br>JOINTLY ADMINISTERED<br>UNDER CASE NO. 08-50754 (AHWS) |
| In Re:<br><br>ANTIETAM FUNDING, LLC,<br><br>DEBTOR. | CHAPTER 11<br>CASE NO. 10-52523 (AHWS) |
| In Re:<br><br>NATIONAL CONSOLIDATED<br>FUNDING, LLC II,<br><br>DEBTOR. | CHAPTER 11<br>CASE NO. 10-52524 (AHWS) |

*Appearances:*

| | |
|---|---|
| Patrick J. Neligan, Jr., Esq.<br>James P. Meunker, Esq.<br>Neligan Foley LLP<br>325 North St. Paul, Suite 3600<br>Dallas, TX 75201 | For the Debtors |
| James Berman, Esq.<br>Zeisler and Zeisler<br>556 Clinton Ave., P.O. Box 3186<br>Bridgeport, CT 06605 | For the Debtors |
| Norman N. Kinel, Esq.<br>David A. Van Grouw, Esq.<br>Lowenstein Sandler PC<br>1251 Avenue of the Americas, 18th Floor<br>New York, NY 10020 | For the Movants |
| John F. Carberry, Esq.<br>Cummings & Lockwood LLC<br>Six Landmark Square<br>Stamford, CT 06901 | For the Movants |

### MEMORANDUM AND ORDER (1) ADJOURNING HEARING ON MOTION TO DISMISS UNDER 11 U.S.C. § 1112(b); (2) STAYING DISCOVERY; and (3) SETTING DATE FOR FILING DISCLOSURE STATEMENT AND CHAPTER 11 PLAN

On November 11, 2010, AllFinancial Group, LLC, AllSettled Group, Inc., AllSettled Partners, Inc., AllSettled Assets, LLC, and Capital Credit Group SD, Inc. (collectively, the "AllSettled Parties") moved to dismiss the chapter 11 cases of Antietam Funding, LLC ("Antietam") and National Consolidated Funding, LLC II ("NCF") (collectively, the "New Debtors") for "cause" under to 11 U.S.C. § 1112(b) (hereafter, the "Motion to Dismiss"). On November 16, 2010, the court conducted an initial hearing on the Motion to Dismiss, and with the consent of the parties, set a December 8, 2010 discovery bar date and trial dates of December 14-16, 2010.

I.

The New Debtors are wholly-owned subsidiaries of SageCrest II, LLC ("SC II"), which is a specialty lending hedge fund. On August 17, 2008, SC II and a related entity, SageCrest Finance ("Finance"), filed for chapter 11 bankruptcy relief. On August 20, 2008, Sage Crest Holdings ("Holdings"), another related entity filed a chapter11 petition. On September 11, 2008, SageCrest Dixon ("Dixon"), also a related entity, filed a chapter 11 petition. By orders dated August 27, 2008 and October 30, 2008, SC II, Finance, Holdings and Dixon (collectively, the "Old Debtors") were administratively consolidated. In addition, there have been two other chapter 11 filings of SC II-related entities: II Lugano on August 29, 2008 (Case No. 08-50811) and H.C. Walden Properties, LLC, on September 1, 2010 (Case No. 10-52106). Those debtors have not sought administrative consolidation.

The New Debtors, wholly-owned subsidiaries of SC II, are the latest subsidiaries to file petitions.[1] Both are special entity limited liability companies that between them hold a portfolio of life insurance policies and life settlements (hereinafter, the "Portfolio"). On October 19, 2010, the New Debtors filed identical motions, requesting their cases be administratively consolidated with the Old Debtors. The Old Debtors supported that request. The AllSettled Parties objected. A hearing was conducted on December 7, 2010, and over the AllSettled Parties' objection, the motions were granted.

SC II is now in the process of finalizing a plan. Over the past two years, the path to plan confirmation has been obstructed by obstacles requiring extensive court involvement, to wit, numerous, lengthy, complex and costly contested matters and litigation, most notably, the "Topwater Dispute".[2] The Topwater Dispute has been resolved, which eliminates a major confirmation hurdle. The Old Debtors are actively working to resolve other disputes with its secured creditor, Deutsche Bank.[3]

---

[1] A chart of the 27 interrelated SC II entities is attached as Appendix A. The chart does not include Holdings, the so-called "Offshore Debtor". Antietam is located at the far right of the second row, and NCF is located at the far left of the third row. For convenience, the "SageCrest cases" shall consist of the Old Debtors, the New Debtors, and the affiliated, but not jointly administered, cases of II Lugano and H.C. Walden Properties, LLC.

[2] See generally In re SageCrest II, LLC, No. 08-50754, 2010 WL 1981041, *1-3 (Bankr. D. Conn. May 18, 2010) (providing a detailed background of SageCrest II, including the Topwater dispute.).

[3] Deutsche Bank objected to the Old Debtors' disclosure statement and plan and proposed its own. On September 29, 2010, the Court approved the disclosure statements of the Old Debtors and Deutsche Bank, but deferred permitting those parties to solicit acceptance until a proposed form of joint ballot was submitted and approved. See § 1125(a)(2). A continued hearing was held on November 9, 2010, at the conclusion of which, based on the parties' representations that they were working to resolve their differences, the court continued the confirmation hearing to January 11, 2011.

The New Debtors may be included in the Old Debtors' plan, or they may file separate, stand-alone plans.[4] However, whether or not they are included, they are inextricably intertwined with SC II by their status as wholly-owned subsidiaries. For example, it is undisputed that the Portfolio is a shrinking asset. Therefore, the instant Motion to Dismiss affects not only the New Debtors, but also SC II and the other Old Debtors.

On November 11, 2010,[5] the AllSettled Parties filed the instant Motion to Dismiss under § 1112(b), which provides:

> (1) . . . [O]n request of a party in interest, and after notice and a hearing, . . . the court shall . . . dismiss a case . . . if the movant establishes cause.
> (2) The relief in paragraph (1) shall not be granted . . . if the debtor or other party in interest objects and establishes that—
> > (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and
> > (B) the grounds for granting such relief include an act or omission of the debtor . . . —
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1)-(2). Sub-paragraph (b)(3), which is the predicate for this Order, provides:

> The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after the commencement of such hearing, unless the movant expressly consents to a continuance for a specified period of time or *compelling circumstances* prevent the court from meeting the time limits established by this paragraph.

---

[4] If the New Debtors are not included in the Old Debtors' plan, it is not yet known whether the New Debtors will file separate plans or a joint plan. For convenience, the court will assume a single plan.

[5] November 11, 2010 was Veteran's Day, a federal holiday.

*Id.* § 1112(b)(3) (emphasis added). The issue addressed here centers on the meaning of "compelling circumstances".

II.

A.  Compelling Circumstances – Time Constraints

On November 16, 2010, *i.e.*, within the 30-day time limitation of § 1112(b)(3), the court commenced a hearing on the AllSettled Parties' Motion to Dismiss. At the conclusion of that hearing and with the AllSettled Parties' consent, the § 1112(b)(3) time limitation was extended for a discovery bar date of December 8, 2010 and continued trial dates of December 14-16, 2010. On November 23 and 24, the AllSettled Parties served extensive discovery requests upon the Official Committee of Equity Security Holders of SC II and Finance (hereinafter, the "Equity Committee"), and the Old Debtors and New Debtors, respectively, consisting of, *inter alia*:

(1) 39 categories of documents requested from the Equity Committee;

(2) 77 categories of documents requested from Antietam; and

(3) 76 categories of documents requested from NCF.

See Equity Committee's Motion for Protective Order, Ex. C (Case No. 08-50754, doc. #1278-1); Debtors' Motion and Brief for a Protective Order, Exs. A-B (Case No. 08-50754, doc. #1274-1).[6], [7]

---

[6] Thanksgiving was on November 25, 2010. Thus, the AllSettled Parties service of document requests occurred one and two days before that holiday (and the corresponding holiday weekend where many, including the court, extend the holiday by closing for business on Friday, November 26, 2010).

[7] The Protective Motions state that the respective respondents were served with 77 separate document requests. See Debtors' Motion for Protective Order at 1-2. The supporting exhibits, however, show document requests directed only to the New Debtors.

On November 30, 2010, the Old and New Debtors and the Equity Committee filed motions for protective orders (collectively, the "Protective Motions"). (*See* Case No. 08-50754, doc. #1274, doc. #1278.) They also requested an emergency hearing. The next day, Wednesday, December 1, 2010, just before 2:00 p.m., the AllSettled Parties filed objections. (*See, e.g.,* Case No. 10-52524, doc. #69 (hereafter, the "Objections").) At 3:30 p.m., the Court commenced a two-hour emergency hearing. The parties did not agree on what, if any, discovery would be permitted, and each accused the other of failing or refusing to cooperate. It became apparent to the court that it would have to consider each of the discovery requests, the Protective Motions, and the Objections at a continued hearing, and because of the extensive and contentious nature of the AllSettled Parties' requested discovery, that assessment would be a lengthy process.

Even if the court had continued the hearing to the next day, and even assuming it could draft an order by the following day, it is probably that certain discovery requests would have been allowed thereby requiring the court to provide further time for compliance before the trial of the Motion to Dismiss. Those narrow time constraints, under this "best case" scenario,[8] provide sufficiently "compelling circumstances" to justify an extension of the § 1112(b)(3) 30-day time limit.

---

[8] This "best case" scenario does not take into account other matters on the court's calendar. For example, the court also had another SageCrest matter for which it had to prepare: a motion for prejudgment remedy in Adv. Pro. 10-1042 and Adv. Pro. 10-5066 (SC II v. the Art Capital Parties). Similar to the contentious nature of the New Debtors' cases, the Art Capital litigation has been equally, if not more, disputatious. Further, the court's next motion calendar was scheduled for the following Tuesday, December 7, 2010. That calendar consisted of 32 pages with 64 matters, which also required time for preparation. Moreover, these scheduled matters do not take into account two emergency telephone conferences on Friday, December 3rd.

In essence, having waited a week before serving discovery requests,[9] the AllSettled Parties created the basis for the delay of the trial they now oppose.[10] Therefore, and over the AllSettled Parties' objection, the court concluded that the trial would have to be continued, and that the continued date would track an expedited plan confirmation schedule.[11]

B.   **Compelling Circumstances – Section 105(a)**

As stated, *supra* at 6-7 and note 8, the court's docket and calendar satisfies the §112(b)(3) exception. That aside, "compelling circumstances" may also be found when an overarching tenet at the core of bankruptcy law and policy warrants an analysis that is not dependent on the court's docket. Under those circumstances, the powers of the court, provided by § 105(a), should be employed.

Courts are often called upon to balance competing interests and harmonize conflicting code sections of chapter 11, *i.e.*, § 1112(b)(3) and § 11129(a), as "is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a). That exercise is especially necessary when there are multiple, interrelated cases. Here, the New Debtors' cases are a small part of the SageCrest constellation of cases, *see*

---

[9] *I.e.*, from November 16, 2010, when the court gave the parties the discovery bar date, to November 23, 2010, when the AllSettled Parties served its first document requests.

[10] The court notes authority to the effect that a consent to an adjournment, even if a party later objects to a further adjournment, waives the 30-day hearing requirement of § 1112(b)(3). *See, e.g., In re Wilderness Crossings, LLC*, ___ B.R. ___, 2010 WL 4977135, *1 and n.2 (Bankr. W.D. Mich. Nov. 23, 2010).

[11] At the December 1st hearing, the New Debtors were directed to file their disclosure statement and plan by January 14, 2011, together with a motion to expedite the hearing on both. The court provided the parties with a expedited hearing date of January 26, 2011 for the New Debtors' disclosure statement and plan.

*supra* note 1, and the principles of judicial economy and the interests of all the parties in the SageCrest cases warrant a wide focus.

While the court recognizes that a motion to dismiss a case under § 1121(b) may be made at any time, the public policy served by chapter 11 is to give a debtor a reasonable time to file a plan. *See generally United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 376 (1988) (recognizing that a debtor should be given reasonable time to propose a plan with a reasonable possibility of success). Thus, chapter 11 debtors are initially permitted to operate and manage their businesses, *see, e.g.*, §§ 1107, 1108, and are provided an exclusive right to formulate and file a plan, *see Timbers*, 484 U.S. at 376 (citing § 1121(b)).

The crux of the AllSettled Parties' Motion to Dismiss is that the New Debtors' cases were filed in bad faith. It is noteworthy that that reason is conspicuously absent from the non-exclusive list of causes stated in § 1112(b)(4).[12] Of greater significance,

---

[12] The non-exclusive list is:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the Untied States trustee (or the

all of the enumerated causes in that section are based on *post*-bankruptcy behavior. Here, the AllSettled Parties argue there is cause for dismissal because of alleged pre-petition factors, *e.g.*, the New Debtors were not in need of rehabilitation, and they were not experiencing financial distress. As further grounds, the AllSettled Parties claim the New Debtors will not be able to confirm a plan and are seeking to avoid ongoing payments and other obligations to the AllSettled Parties. See, e.g., § 365(a).

The bankruptcy code specifically includes a provision in chapter 11 to address matters relating to good faith, *i.e.*, § 1129(a)(3). Under that subsection, a plan may not be confirmed unless it is found to have been "proposed in good faith". Congress' drafting scheme, wherein the finding of good faith is mandatory to confirm a plan, lends support for the court's conclusion that the better administration of these cases is to defer the AllSettled Parties' Motion to Dismiss and require an expedited plan confirmation

---

       bankruptcy administrator, if any);
       (I) failure timely to pay taxes owed after the date of the order fro relief or to file tax returns due after the date of the order for relief;
       (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
       (K) failure to pay any fees or charges required under chapter 123 of title 28;
       (L) revocation of an order of confirmation under section 1144;
       (M) inability to effectuate substantial consummation of a confirmed plan;
       (N) material default by the debtor with respect to a confirmed plan;
       (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
       (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

process. Under that procedure, the AllSettled Parties will be afforded an opportunity to raise all the arguments it has asserted in its Motion to Dismiss. To assuage the AllSettled Parties' concerns, the New Debtors have agreed to an expedited schedule which will require them to file a disclosure statement and plan by January 14, 2011.

Whether on not its plan is dependent or independent of the Old Debtors' plan, the fate of the New Debtors is linked to that of the Old Debtors, who, after considerable effort and compromise, have succeeded in securing the consent of former objecting creditors and interests, thereby making plan confirmation a realistic prospect. Since the New Debtors' right to reorganize would be terminated by granting the AllSettled Parties' Motion to Dismiss, but the converse of that proposition would not follow, there is a compelling circumstance to defer the trial on the AllSettled Parties' Motion to Dismiss under §105(a).

III.

Accordingly,

IT IS ORDERED that the continued hearing on the AllSettled Parties' Motion to Dismiss shall be adjourned to the date set to consider confirmation of the New Debtors' plan;

IT IS FURTHER ORDERED that all discovery with respect to the AllSettled Parties' Motion to Dismiss is stayed until further order of the court; and

IT IS FURTHER ORDERED that the New Debtors shall file a disclosure statement, plan, and a motion to shorten time for approval of the disclosure statement and plan on or before January 14, 2011.

Dated this 22nd day of December, 2010 at Bridgeport, Connecticut.

BY    /s/ Alan H. S. Shiff

Alan H. S. Shiff
United States Bankruptcy Judge

APPENDIX A

# SAGECREST
## Entity Structure (Legal Ownership) - August 2008

- SAGECREST II LLC
  - Formed in Delaware
  - Owned by 112 members/investors

- SAGECREST Bethel, LLC — Formed in Delaware
- 3 Pickwick, LLC — Formed in Delaware
- SC III Funding LLC — Formed in Delaware
- Axle Capital, LLC — Formed in Delaware
- Antietam Funding, LLC — Formed in Delaware
- National Consolidated Funding, LLC II — Formed in Delaware
- SAGECREST Caton LLC — Formed in Delaware
  - Caton on the Park, LLC — Formed in New York
- SAGECREST Vegas LLC — Formed in Delaware
  - Il Lugano, LLC — Formed in Florida
- SAGECREST Mortgage LLC — Formed in Delaware
- SAGECREST Finance, LLC (SCF) — Formed in Delaware
  - Sodus Holdings, LLC — Formed in New York
  - SAGECREST Westborough, LLC — Formed in Delaware
  - SAGECREST Vegas II, LLC — Formed in Florida
  - Evestmac Funding I LLC — Formed in Delaware — See Footnote*
  - Estrella del Mar (Sea Star) S.A. — Honduran Corporation
  - SAGECREST Milford, LLC — Formed in Delaware
  - SAGECREST Stafford, LLC — Formed in Delaware
  - Sodus Marina, LLC — Formed in New York
- SAGECREST Chicago LLC — Formed in Delaware
- LLC Walden Properties LLC — Formed in Delaware
- SAGECREST Canada Holdings Inc. — Formed in Delaware
- SAGECREST Dixon Inc. — Formed in Delaware
- Metropolitan Capital Funding LLC — Formed in Delaware — 51% SC II
- SAGECREST Regal Inc. — Formed in Delaware

*Evestmac Funding LLC consists of two separate pools of assets. SageCrest Finance LLC owns 45% of Pool 1 and 50% of Pool 2.